1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KING DAVID LEVON DONAHUE III,

        Plaintiff,

    v.

ANTIOCH POLICE DEPARTMENT; COUNTY OF CONTRA COSTA; CITY OF ANTIOCH; OFFICERS JOSHUA RIOSBAAS, KYLE SMITH, SHAWN MARQUES, JACOB KING, RYAN GEIS, RUDOLPH NIEVES, ARTURO BECERRA, MATTHEW KOCH, BRANDON BUSBY, and JOSHUA EVANS; and PROSECUTOR HEATHER P. TURNER,

        Defendants.

No.  C 23-05564 WHA

**ORDER DENYING IN PART AND GRANTING IN PART THE MOTIONS TO DISMISS**

**INTRODUCTION**

In this Section 1983 action, plaintiff seeks relief for being held for over 48 hours without judicially determined probable cause, among other injuries.  In three separate motions, a city and its active police officers, a county and a prosecutor, and a former police officer argue that the plaintiff's second amended complaint fails to state a claim.   For reasons that follow, as to the prosecutor, the former police officer, and all but two active police officers, dismissal is **GRANTED.**  As to the county, the city, and the remaining two officers, dismissal is **GRANTED IN PART AND DENIED IN PART.**  Plaintiff is granted another chance to amend his complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**STATEMENT**

1.    FACTUAL ALLEGATIONS.

On January 6, 2023, at about 5:00 p.m., Antioch Police Department officer Joshua Riosbaas pulled over King David Levon Donahue III (Dkt. No. 42 ("2d Amd. Compl.") 3). Officer Riosbaas and other officers later reported that Donahue had driven recklessly at 55 miles per hour where the speed limit was 45 miles per hour (*see id.* at 3, 5, 9).  Officer Riosbaas radioed for backup (*id.* at 3).  Once Donahue stopped, Officer Riosbaas used his car's blow horn to order Donahue to lower all four windows and turn off his automobile (*ibid.*).

At about 5:10 p.m., Antioch Police Department's K-9 unit arrived (*ibid.*).  The unit was known to have caused deaths in 2018 and 2019 (*ibid.*).  And, by now, the officers had their "AR-15 assault rifles drawn at [Donahue]" (*ibid.*).  He "fear[ed] for his life" (*ibid.*).  Donahue exited his automobile holding his hands up (*ibid.*).  In his left hand, he held a passport; in his right, an iPhone to record the encounter (*id.* at 3–4).  Officer Riosbaas and an unnamed K-9 unit officer approached Donahue, took his iPhone, and placed him under arrest without incident (*id.* at 4).  Then or shortly thereafter, Donahue was hand-cuffed tightly (*compare id.* at 3–4 (arrested ten minutes into a 50–60 minute recorded stop), *with id.* at 13 (handcuffed for 40 minutes)).  A second K-9 officer, Kyle Smith, told Donahue that if he made no sudden move, they would not shoot (*see id.* at 4).

Donahue's iPhone was never returned to Donahue (*id.* at 11).

A little before 5:15 p.m., Officer Smith and an unnamed officer spoke together.  One told the other that "sovereign citizens" believe they are above the law and will kill police officers (*ibid.*).  The second amended complaint does not tell us how the officers came to believe Donahue was a sovereign citizen.  These and other officers muted and unmuted their body cameras' microphones during the encounter (*see, e.g.*, *id.* at 4–5, 8–9).  We are not told what the officers said or might have said when muted.

At about 5:30 p.m., Donahue was placed into the back of Officer Riosbaas's police car, and a search of Donahue's automobile began (*id.* at 4).  Donahue asked Officer Riosbaas why

his automobile was being searched, but was given no reason (*ibid.*).  Officer Riosbaas, on a recorded camera, told another officer only that Donahue had been speeding (*id.* at 5).

At about 5:40 p.m., Officer Riosbaas told Donahue that he would be released if he signed a traffic ticket (*ibid.*).  He didn't explain what the ticket was for (*ibid.*).  After questioning Donahue further, Officer Riosbaas realized Donahue's license had expired and told him to identify someone to come get him and his automobile (*ibid.*).  Donahue named an individual who had a license (*see ibid.*).  Officer Riosbaas exited the police car and "can be heard on his body camera calling [Donahue]'s assistan[ts] sovereign citizens" — presumably meaning the person(s) Donahue wanted to retrieve him and his automobile (*see ibid.*).  The person(s) never came, if ever contacted.

Officer Riosbaas joined the ongoing search of Donahue's automobile (*ibid.*).

By about 5:50 p.m., the searching officers found a firearm inside a gym bag on the front passenger seat of Donahue's automobile (*see id.* at 5–6, 9).

Donahue was taken to Contra Costa County Jail (*see id.* at 6).  On the way, an unnamed officer "took a personal photo of [Donahue]" (*ibid.*).  The Antioch Police Department later circulated it on a group chat (*ibid.*) and posted it or another photo of Donahue to Instagram alongside allegedly false accusations (*id.* at 11–12).

That same evening, on January 6, 2023, Donahue was placed in jail.  He did not receive a judicial determination of probable cause within 48 hours (*id.* at 12).  And, he was not arraigned by a judge until at least 72 hours in jail (*id.* at 6, 12–13).  Finally, on January 13, 2023, seven days after being taken into custody, Donahue was released on bail (*see id.* at 6).

In April 2023, Donahue appeared for a preliminary hearing in the ensuing state criminal case (*see id.* at 6–7).  The matter was continued until June 2023 (*id.* at 7).  Charges were later dropped "in the best interest of justice" (*ibid.*).

Donahue's automobile, which he had paid to have released around the time of his bail (*id.* at 6), was not released until after his charges were dropped — at least five months later (*id.* at 14).  Again, Donahue's iPhone, which contained video of the traffic encounter, was never returned (*see id.* at 11).

2.    THE CLAIMS FOR RELIEF AND DEFENDANTS.

Donahue's second amended complaint asserted constitutional violations under Section 1983. It includes numbered "counts," or claims for relief. Reorganized by event, they are:

| Count | Event (key facts) | Constitutional Amendment and Tort | |
|---|---|---|---|
| 1 | Roadside Stop (initial and prolonged) | IV | *Unlawful Seizure of Person* |
| 14 | Armed Arrest (with guns, K-9s, handcuffs, threats) | IV | *Excessive Force* |
| 11 | Tight Handcuffing and Injury (for 40 minutes with complaining) | IV XIV | *Excessive Force* *Deliberate Indifference* |
| 9 | Automobile Search (after arrest, before need to impound) | IV | *Unlawful Search of Property* |
| 15 | Automobile Impoundment (initial and prolonged after payment) | IV XIV | *Unlawful Seizure of Property* *Due Process* |
| 6 | iPhone Confiscation (still not returned) | IV XIV | *Unlawful Seizure of Property* *Due Process* |
| 7 | Instagram Post About Donahue (making false allegations) | IV | *Rights Violations Plus Defamation* |
| 3 | Evidence Fabrication (incorrect police reports, gaps in body-camera recordings) | XIV | *Due Process* |
| 4 | Evidence Suppression (suppressed iPhone recording and impeachment evidence) | XIV | *Due Process* |
| 16 | Policing False Crime | I IV | *Retaliatory Arrest* *Malicious Prosecution or Policing Section 1985 Conspiracy* |
| 8 | Jailed Without Probable Cause (over 48 hours without a judicial decision) | IV | *Unlawful Seizure Before Legal Process* |
| 13 | Jailed Without Timely Arraignment (held for over 72 hours without one) | IV XIV | *Unlawful Seizure After Start of Process* *Due Process* |
| 12 | Hearing Delay (waited for witness to testify, but witness did not testify) | XIV | *Due Process* |
| 5 | Prosecutor Conduct (disclosed impeachment evidence late) | XIV | *Due Process* |
| 10 | Prosecuting False Crime | IV | *Malicious Prosecution* |

Note that the second amended complaint is missing a "COUNT 2."

The second amended complaint identified defendants using names and numbers, not always consistently (*see* City Br. 3 n.6). Reordered by their alleged presence at events, and with counsel added, they are:

| # | Defendant | Alleged Presence at Events | Counsel |
|---|---|---|---|
| 4 | Officer Joshua Riosbaas | At stop, arrest, search, transport, reporting. | City |
| N/A | Unnamed, Riosbaas's partner | Same as prior, and photographed Donahue. | |
| N/A | Unnamed, K-9 unit officer | At arrest and iPhone seizure. | |
| 5 | Officer Kyle Smith | At arrest and iPhone seizure, with gun. | |
| 6 | Officer Shawn Marques | At roadside scene, but role unclear. | |
| 1 | Antioch Police Department | Manager of officers, vehicle impounding. | |
| 3 | City of Antioch | Manager of officers, vehicle impounding. | |
| 13 | Former Officer Joshua Evans | At criminal trial as expected witness. | Private |
| [14] | Prosecutor Heather Turner | At criminal trial as prosecutor. | County |
| 2 | County of Contra Costa | Manager of jail, prosecutor, impounding. | |
| 10 | Officer Arturo Becerra | Not described at any events in complaint. | City |
| 12 | Officer Brandon Busby | | |
| 8 | Officer Ryan Geis | | |
| 7 | Officer Jacob King | | |
| 9 | Officer Rudolph Nieves | | |
| 11 | Officer Matthew Koch | | |

Unidentified "JOHN DOE" officer(s) remain in the complaint (2d Amd. Compl. 3–6).

Donahue seeks $5,000 in lost wages and $35,000,000 in punitive damages (*see id.* at 16).

### 3.    PROCEDURAL HISTORY AND JURISDICTION.

Proceeding *pro se*, Donahue filed a complaint in October 2023 (Dkt. No. 1).  A magistrate judge granted Donahue's application to proceed *in forma pauperis* (Dkt. No. 20). The case was reassigned to the undersigned district judge in February 2024 (Dkt. No. 22). Briefing continued on a previously filed motion to dismiss, with extended time allowed for plaintiff (Dkt. No. 24).  After two continuances (Dkt. Nos. 23, 27), the hearing on the motion to dismiss and an initial case management conference were held in June 2024 (Dkt. No. 33).

The Court uncovered that Donahue had not served all defendants — and yet that the Court *should have* ordered the U.S. Marshal to serve them on Donahue's behalf given his *in forma pauperis* status (*see* Dkt. No. 34 at 2 (citing Rule 4(c)(3)).  Rather than rule on the motion to dismiss, the Court granted Donahue a chance to amend his complaint based on what he had learned since filing (if he wished) (*ibid.*).  The Court ordered that the U.S. Marshal complete service of process (*ibid.*).

Donahue filed an amended complaint (Dkt. No. 40), then a second amended complaint (Dkt. No. 42).  All original parties were served (or waived service):  The City of Antioch, all

United States District Court
Northern District of California

active officers (Dkt. Nos. 34, 36), and the County of Contra Costa (Dkt. No. 36).  And, after

the second amended complaint, newly added parties waived service:  Former Officer Joshua

Evans (Dkt. Nos. 51, 53, 55, 56, 88) and Prosecutor Heather Turner (Dkt. Nos. 46, 48, 50, 88).

     In response to the second amended complaint, defendants now bring Rule 12 motions.

Donahue has had extra time to oppose (*see* Dkt. Nos. 46, 82):

- *The City of Antioch and Active Officers*, that is, all officers other than Former Officer Joshua Evans, have moved to dismiss (Dkt. No. 43 ("City Br.")), Donahue has opposed (see Dkt. No. 49 at ECF 1–28), and the City and officers have replied (Dkt. No. 52);

- *Former Officer Evans* has moved to dismiss (Dkt. No. 53-1 ("Evans Br.")), which Donahue has opposed (Dkt. No. 75), and to which Former Officer Evans has replied (Dkt. No. 80 ("Evans Reply")); and,

- *The County* has moved to dismiss (Dkt. No. 44 ("County Br.")), and has supplemented its motion on behalf of co-represented *Prosecutor Turner* (Dkt. No. 50); Donahue has opposed the County's motion (Dkt. No. 49 at ECF 29–38), and the supplement (Dkt. No. 85; *see* Dkt. No. 82); finally, the County and Prosecutor Turner have replied (Dkt. Nos. 77, 88; *see* Dkt. No. 82).

     This is the Court's first substantive order on the claims in the case.

     Because Donahue's claims raise federal questions under Section 1983, this Court has

jurisdiction.  *See* 28 U.S.C. § 1331.  Its jurisdiction is not precluded by the dismissed state

proceeding against Donahue:  He is not a "state-court loser[] complaining of injuries caused by

state-court judgments."  *Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)

(re *Rooker-Feldman* bar); *see also Duarte v. City of Stockton*, 60 F.4th 566, 568, 570 (9th Cir.)

(re *Heck*'s standing bar), *cert. denied*, 143 S. Ct. 2665 (2023).  And, no party contests

jurisdiction, nor provides any reason why the Court should "surrender" jurisdiction.  *See Moses

H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

## ANALYSIS

     A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(quotation omitted); *accord Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also* FRCP

8(e).  Under Rule 12(b)(6), so long as the pleadings make plausible that the defendant acted

unlawfully, they must be sustained. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Part 1, this order considers whether the second amended complaint's allegations suffice to state claims respecting the alleged incidents, taken chronologically. In Part 2, this order considers the motions to dismiss brought by defendants not yet discussed in relation to those events, or who pose special issues. And, in Part 3, it explains how Donahue may amend.

### 1.    CLAIMS STATED REGARDING THE ALLEGED EVENTS.

In broad strokes, Donahue's second amended complaint alleged constitutional torts for unlawful seizure, unlawful search, excessive force, malicious prosecution, and failure to return property. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim, then, a complaint must plausibly allege: (1) a constitutional or other right that was breached, (2) the remaining elements of a common-law tort addressing analogous harms to guide relief, and (3) defendants who committed the breach and are proper subjects of suit (not immune). *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 483–86 (1994); *Thompson v. Clark*, 596 U.S. 36, 43 (2022); *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941–42 (9th Cir. 2020).

### A.    THE ROADSIDE ENCOUNTER.

#### (i)    Initial and Prolonged Stop: Fourth Amendment Unlawful Seizure of Person ("COUNT 1").

Donahue's second amended complaint alleged that the initial stop for a purported traffic ticket and its extension into a prolonged detention for something else — waiting ten minutes for backup, then for the search — were unreasonable seizures (2d Amd. Compl. 3–4, 7–8).

The Fourth Amendment protects against unreasonable seizures, even on roadways. *Byrd v. United States*, 584 U.S. 395, 404–07 (2018). An (1) initial and (2) prolonged stop are

United States District Court
Northern District of California

separate seizures, and each must be reasonable. *See Rodriguez v. United States*, 575 U.S. 348, 354–55, 357–58 (2015). Common-law false imprisonment guides other aspects of relief. *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007).

Officer Riosbaas does not move to dismiss these claims (City Br. 5–6).

Officer Smith, however, does (*id.* at 14 n.11). He contends that he is not alleged to have assisted the arrest (*ibid.*). He fails to mention that he is alleged to have threatened to shoot Donahue during the arrest (2d Amd. Compl. 4). That suffices to state a claim for the seizure.

Officer Marques, however, is alleged only to have been on the scene as an "assist" (*ibid.*). The allegations do not clarify what Officer Marques "assist[ed]" in doing — whether integrally participating in seizing Donahue, or instead doing something else, like redirecting traffic. *Cf. Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022).

As a result, the claim for the *initial* roadside seizure of Donahue against Officer Riosbaas is Sustained. The claim for the *extended* roadside seizure of Donahue against Officers Riosbaas and Smith is Sustained. Otherwise, against all other defendants, the claims related to the roadside seizure ("COUNT 1") are Dismissed with Leave to Amend (*see* Part 3).

### (ii)    Armed Arrest:  Fourth Amendment Excessive Force ("COUNT 14").

Donahue's second amended complaint next alleged excessive force for a traffic stop and resulting arrest: The use of K-9s, drawn AR-15 assault weapons, tight handcuffs, and verbal threats to shoot — and sometimes several at once (2d Amd. Compl. 3–4, 13–14). The City and its active officers seek dismissal on the sole grounds that "[a]side from the conclusory 'tight handcuffing' . . . there are zero facts to support a viable excessive force" claim (City Br. 12).

Under the Fourth Amendment, added force is an added seizure that must be reasonable. *See Graham v. Connor*, 490 U.S. 386, 394–95, 397 (1989). Reasonableness turns on (1) the crime's severity, (2) the individual's immediate threat to others, and (3) whether the individual was evading arrest. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 2681 (2012). The factors are weighed "from the perspective of a reasonable

officer on the scene" as the plaintiff alleges it.  *Graham*, 490 U.S. at 396.  The tort of excessive force helps guide relief.  *See Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 431 (2017).

Here, the allegations make the claim for excessive force plausible.  *The alleged crime was not serious*:  Donahue was stopped while driving 55 miles per hour where the limit was 45 miles per hour (*see* 2d Amd. Compl. 5, 9).  And, Donahue was plausibly driving with adequate control given that, during the traffic stop, Officer Riosbaas saw fit to tell Donahue he could sign his ticket and drive away (*see id.* at 5).  *The alleged flight risk was limited*:  Donahue pulled over and waited roadside, without any effort to escape, for ten minutes until backup arrived (*id.* at 3).  *And, the alleged immediate threat was limited*:  Donahue waited compliantly and emerged with his hands up (*see ibid.*).  Still — even after Donahue was compliant or handcuffed — an officer threatened to shoot him (*see ibid.*).  That suffices to state a claim.  *See Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir.), *cert. denied*, 139 S. Ct. 381 (2018).

The same officers implicated by the seizure were likewise implicated here.  Thus, the claim for *excessive force in arrest* ("COUNT 14") against Officers Riosbaas and Smith is SUSTAINED.  Against all others, the claim is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

> ### (iii)  Tight Handcuffing During Detention:  Fourth Amendment Excessive Force or Fourteenth Amendment Indifference ("COUNT 11").

Donahue's second amended complaint also alleged that he requested aid or treatment during the stop, that officers failed to assist, and that this resulted in injuries from having been handcuffed excessively tightly for at least 40 minutes (2d Amd. Compl. 13).

*If construed as a Fourteenth Amendment claim* for deliberate indifference to the medical consequences of detention, the claim fails.  Detention "conditions [must] put the plaintiff at substantial risk of suffering serious harm."  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), *cert. denied*, 580 U.S. 1099 (2017).  In opposition, Donahue references a doctor's report (Dkt. No. 49 at ECF 18).  The second amended complaint did not.

*But, if construed as a Fourth Amendment claim* for excessive force — as the City and its active officers construe it — it survives.  Donahue allegedly felt his handcuffs were too tight, requested relief from Officer Riosbaas, and did not get any (*see* 2d Amd. Compl. 13; *see id.* at

United States District Court
Northern District of California

4–5 (speaking only with Officer Riosbaas)).  What words he used might matter at trial (*cf.* City Br. 9).  But the claim is plausibly alleged against Officer Riosbaas.  *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004) (reversing summary judgment to find violation where handcuffed for 20 minutes); *Nichols v. City of San Jose*, No. 14-CV-03383-BLF, 2017 WL 1398410, at *8 (N.D. Cal. Apr. 19, 2017) (Judge Beth Labson Freeman) (60 minutes).

The claim for *excessive force during detention* ("COUNT 11") against Officer Riosbaas is SUSTAINED.  Against all others, it is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

### (iv)    *Automobile Search:  Fourth Amendment Unlawful Search of Property ("COUNT 9").*

Donahue's second amended complaint also alleged an unlawful search of his automobile.  Specifically, it alleged a search that began *after* Donahue exited his automobile, but *before* Officer Riosbaas realized Donahue did not have a license (2d Amd. Compl. at 4–5, 12).

Officer Riosbaas does not contest the sufficiency of the allegations (City Br. 10).  *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) (limiting vehicular search incident to arrest); *United States v. Cervantes*, 703 F.3d 1135, 1140–43 (9th Cir. 2012) (limiting inventory searches).

But other officers do contest that the allegations implicate them in the search (City Br. 10, 13–14).  Officer Marques, for instance, is alleged to have unmuted his body-worn camera about the time the search began (2d Amd. Compl. 4).  But the second amended complaint did not say what he was doing.  Allegations must do more than "lump all the defendants together." *Peck*, 51 F.4th at 890 (quoting *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)).

The claim for *unlawful search* ("COUNT 9") is SUSTAINED as to Officer Riosbaas, but as to all other defendants is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

### B.    THE PROPERTY IMPOUNDMENT AND THE POLICE WORK.

### (v)    *Automobile Impoundment and Failure to Return: Fourth Amendment Seizure or Fourteenth Amendment Due Process ("COUNT 15").*

Donahue's second amended complaint alleged that his automobile was (1) impounded despite the availability of a third party to pick it up, and — jumping months ahead in our

United States District Court
Northern District of California

United States District Court
Northern District of California

timeline — (2) not released to him even after he paid for its release and even after his criminal charges were dropped, causing him financial hardship (2d Amd. Compl. 6, 14).

The Fourth Amendment protects against the unreasonable seizure of a person's car. *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 513, 516 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 142 (2019). Both (1) an initial impound and (2) any extended failure to return a car are seizures and must be reasonable. *See ibid.* A roadside seizure can be reasonable if necessary to clear the road. *Ibid.; see also Miranda v. City of Cornelius*, 429 F.3d 858, 862–64 (9th Cir. 2005). But necessity might not arise if an arrestee "provide[s] a licensed driver who c[an] take possession of" the car. *See Sandoval*, 912 F.3d at 516. And, even if impounding a car is reasonable, keeping the car once its owner can remove it requires a new rationale. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1284 (2018). Such failures can also violate the Fourteenth Amendment. *Cf. City of Cornelius*, 429 F.3d at 860, 866–69.

Officer Riosbaas accepts the pleading's sufficiency as to him (City Br. 13). All other officers argue that the second amended complaint does not sufficiently allege their involvement (*see ibid.*). For reasons like those explained above, they are right. *See Peck*, 51 F.4th at 890.

The City argues that Donahue "has not alleged facts to indicate that the City was aware or responsible for Plaintiff's vehicle being [held]" (City Br. 13). But the City conceded that similarly specific allegations respecting how Donahue's iPhone was taken sufficed to implicate the City (*id.* at 5–6 (citing 2d Amd. Compl. 11)). It is even more plausible, based on the allegations, to infer that the City was aware of and played a role in impounding and holding Donahue's automobile, including by setting policy that mechanically resulted in the impound.

The County does not make the same argument about entity liability. Instead, it argues that there is no liability as to anyone respecting this "prisoner's property" (County Br. 6). The County makes no argument for why its point and supporting cases apply to a non-prisoner.

The claim for *unlawful seizure of the automobile* ("COUNT 15") against Officer Riosbaas, the City, and the County is SUSTAINED. Against all others, the claim is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

United States District Court
Northern District of California

### (vi)    *iPhone Confiscation and Failed Return:  Fourth Amendment Seizure or Fourteenth Amendment Due Process ("COUNT 6").*

Similarly, Donahue's second amended complaint alleged that his iPhone was seized when he was arrested at gunpoint, then never returned (2d Amd. Compl. 4, 11).  The City accepts that this claim is stated as to it (City Br. 5).  And, for reasons like those given for the excessive force claim (*supra*), the claim is stated against Officers Riosbaas and Smith.  The claim for the *seizure of the iPhone* ("COUNT 6") against the City and Officers Riosbaas and Smith is **SUSTAINED,** but as to all others is **DISMISSED WITH LEAVE TO AMEND (*see* Part 3).**

### (vii)    *Instagram Post About Donahue:  Fourth Amendment Violations Plus Resulting Defamation ("COUNT 7").*

Donahue's second amended complaint next alleged that the Antioch Police Department posted "dishonest information" about Donahue on its Instagram page and kept it there after Donahue's charges were dropped — injuring his reputation (2d Amd. Compl. 6, 11–12).

Injury to reputation alone is not an actionable constitutional violation.  *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004).  But it can become actionable in connection with some other constitutional violation.  *Ibid.*  For instance, televising mug shots during a wrongfully initiated prosecution can create liability.  *See Buckley v. Fitzimmons*, 509 U.S. 259, 270–71, 274 n.5, 276–77 (1993).  The plaintiff must make out a constitutional violation, plus a reputational injury; the common-law tort of malicious prosecution helps guide relief, *see Thompson v. Clark*, 596 U.S. 36, 43 (2022), as may defamation, *see Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 795 (9th Cir.), *cert. denied*, 506 U.S. 999 (1992).

Here, the second amended complaint failed to allege facts making injury plausible.  The only "dishonest information" allegedly published is that Donahue is a "sovereign citizen" (*see* 2d Amd. Compl. 11–12).  But the second amended complaint itself declared Donahue was a "state national" (*see id.* at 1).  The closeness in those terms makes implausible that, in the ears of listeners, Donahue's reputation would be injured for being called the first rather than the second.  To be clear, this order does not find that the Antioch Police Department published true statements, nor that the two terms mean the same thing (*cf.* City Br. 9 & n.10).  Rather, this

order finds that, because Donahue's theory for injury turns on a distinction not known by all reasonable listeners, Donahue's allegations needed to be pleaded more specifically to show the resulting damage. *Cf. McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112–13 (2007).

The *defamation* claim ("COUNT 7") is **DISMISSED WITH LEAVE TO AMEND (see Part 3).**

### (viii)    Evidence Fabrication:  Fourteenth Amendment Due Process Violations ("COUNT 3").

Donahue's second amended complaint also asserted that officers deliberately altered and fabricated evidence respecting the speeding, the gun, and the encounter (2d Amd. Compl. 8–9).

The Fourteenth Amendment guards against fabricated evidence. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  When asserting this due process right as a constitutional tort, the plaintiff must establish an injury flowing from the fabrication.  *Ibid.*

Here, the second amended complaint did not sufficiently allege actual injury.

*For the speeding*:  The second amended complaint alleged that "in the pre-tr[ia]l reports [an officer] states [Donahue was driving at] 75-mph, and at the hearing while under oath he claims 55-mp[h]" (2d Amd. Compl. 9).  But whether at 75 or 55 mph, Donahue was alleged to have sped in a 45-mph zone (*id.* at 5).  How the alleged overstatement hurt Donahue is unclear.

*For the unlawful gun*:  The second amended complaint similarly alleged that the police report said the gun was found "in the plaintiff['s automobile's] middle compartment[;] however, the video evidence will produce that the unlawful firearm was found in the plaintiff's gym bag in the [automobile's] front seat" (*id.* at 9).  How the alleged difference between the reported and actual location of the gun injured Donahue is likewise unclear.

*And, for the body-camera audio*:  The second amended complaint alleged officers muted microphones (*e.g.*, *id.* at 4).  But it never alleged what the officers said when unrecorded, nor how this injured Donahue.  *Cf. Twombly*, 550 U.S. at 566–67.  There might be bona fide reasons for muting them (*cf.* Dkt. No. 49 at ECF 11).  No alleged facts make plausible that the microphones were muted for nefarious reasons or that the gaps in recordings injured Donahue. *See Griffin v. Asla*, No. 3:21-cv-01036-MO, 2022 WL 4237275, at *9 (D. Or. Sept. 14, 2022) (Judge Michael M. Mosman).

1    The claim for *fabricated evidence* ("COUNT 3") is **Dismissed with Leave to Amend**

2    (*see* Part 3).

3                    (ix)    *Evidence Suppression:  Fourteenth Amendment*
                            *Due Process Violations ("COUNT 4").*
4

5    Donahue's second amended complaint also alleged that the officers or prosecutor

6    suppressed evidence — including his own iPhone-recorded video of the encounter (*see* 2d

7    Amd. Compl. 3–4, 9–10).  The claim fails for reasons like those above.  The second amended

8    complaint nowhere alleged how "the suppression harmed the accused," particularly as all

9    charges were dropped.  *Cf. Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018).  Donahue's

10   opposition includes additional allegations about broader "corruption" and why Prosecutor

11   Turner dropped charges against him (Dkt. No. 49 at ECF 6).  Such allegations might

12   circumstantially support coordinated wrongdoing.  But they might not yet show how a

13   deprivation of Donahue's liberty interests flowed from the alleged suppression.  The claim for

14   *suppressed evidence* ("COUNT 4") is **Dismissed with Leave to Amend** (*see* Part 3).

15                   (x)     *Policing False Crime:  Fourth Amendment*
                            *Malicious Prosecution or First Amendment*
16                          *Retaliatory Arrest ("COUNT 16").*

17   Donahue's second amended complaint similarly alleged that the police officers did the

18   above as "an attempt to stop, detain, arrest, charge and later maliciously prosecute plaintiff

19   with a false crime" (2d Amd. Compl. 14).

20   *As a Fourth Amendment claim of malicious prosecution*, the claim fails because it does

21   not allege plausible malice.  A claim arises where police or prosecutors maliciously pursue a

22   suspect knowingly without probable cause, and any charges against that suspect are later

23   dropped.  *See Thompson*, 596 U.S. at 43–44 (citations omitted); *see also McDonough v. Smith*,

24   588 U.S. 109, 122–23 (2019).  Pleading malice is tough.  A complaint must include enough

25   factual allegations to disambiguate malice from, for instance, incompetence.  *Cf. Iqbal*, 556

26   U.S. at 686–87.  This is especially true because some mistaken and even pretextual seizures

27   and searches are lawful.  *E.g., Whren v. United States*, 517 U.S. 806, 811–13 (1996); *Heien v.*

28   *North Carolina*, 574 U.S. 54, 57 (2014).  Here, the second amended complaint alleged that

United States District Court
Northern District of California

14

officers saw Donahue speeding and found a gun — *not* that he was not speeding or did not have a gun.  In this context especially, the allegations about malice are conclusory.

 *Alternatively, as a First Amendment claim of retaliatory arrest*, the claim fails because it does not allege plausible animus.  A claim arises where police are animated to arrest a plaintiff because of his disfavored political views.  *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (applying *Nieves v. Bartlett*, 587 U.S. 391, 406–08 (2019)).  A complaint must allege *either* that there was no probable cause for the plaintiff's arrest, *or* that there was probable cause but that officers typically use discretion not to arrest persons in such situations.  *Ibid.*; *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (per curiam).  Here, Donahue's second amended complaint alleged that police officers made statements about his supposed views (2d Amd. Compl. 4).  But it did not allege facts making plausible that police officers arrested Donahue *because of* those views (or supposed views).  *See Ballentine*, 28 F.4th at 62.  It did not allege that Donahue was not speeding, for instance, or that officers usually let speeders go.

 *Finally, if construed as alleging a conspiracy to arrest Donahue on false pretenses*, the claim fails for the reasons the individualized claims fail (*supra*).  And, if construed under Section 1985, it fails also because the allegations do not identify a protected racial or class-based group.  *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

 *Malicious policing* ("COUNT 16") is **DISMISSED WITH LEAVE TO AMEND** (*see* Part 3).

### C. THE DETENTION IN JAIL AND THE PROSECUTION.

#### (xi) *Jailed Without Timely Probable Cause:  Fourth Amendment Unlawful Seizure ("COUNT 8").*

 Donahue's second amended complaint alleged he "was held at the county jail without the opportunity to be heard by a magistrate judge within 48 hours as required by law resulting in a fundamental due process violation" (2d Amd. Compl. 12; *see id.* at 6).

 The Fourth Amendment bars unreasonable detention without probable cause.  *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).  "Where an arrested individual does not receive a probable cause determination [by a judge] within 48 hours," irrespective of weekends, the pretrial detention "is presumptively unreasonable."  *Cnty. of Riverside v. McLaughlin*, 500 U.S.

44, 57 (1991). Probable cause may be decided *ex parte* and before arraignment, but it must be decided by a judge. *Gerstein*, 420 U.S. at 114, 123. Common-law false imprisonment helps guide relief. *Cf. McLaughlin*, 500 U.S. at 61–63 (Scalia, J., dissenting, as 48 hours too long).

Here, Donahue's second amended complaint alleged he was arrested on a Friday and not provided with a probable-cause determination within 48 hours. The County seeks dismissal by requesting judicial notice of a probable cause determination (County Br. 4–5). But, even if notice were appropriate, the Court would notice the following excerpt (Dkt. No. 45-1 at 3):

> **CERTIFICATE OF PROBABLE CAUSE**
>
> On the basis of officer's declaration, I hereby determine that **Approved** to detain the above-named individual
>
> Date & Time: **01/07/2023 02:18** Magistrate/Judge:
>
> **JUDGE'S REVIEWS**
>
> 01/07/2023 02:18  -   -

No judge's name or obvious signature appears anywhere.

For their part, the City and its officers argue that they are not alleged to have done more than transfer Donahue to the County (City Br. 9–10). They are right: No allegations about the transfer make plausible that they should be blamed for what followed the transfer. *Cf. Conn v. City of Reno*, 572 F.3d 1047, 1061–62 (9th Cir. 2009), *as amended by* 591 F.3d 1081 (9th Cir. 2010), *and reinstated by* 658 F.3d 897 (9th Cir. 2011).

The claim for *detention without judicially determined probable cause* ("COUNT 8") against the County is SUSTAINED. Against all other defendants, the claim is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

### (xii)    *Jailed Without Timely Arraignment:  Fourth Amendment Unlawful Seizure and Fourteenth Amendment Over-Detention ("COUNT 13").*

Donahue further claims that — although "seen by a magistrate judge . . . three days (at least 72 Hours) later after my arrest" — he was "unlawfully imprisoned at the county jail for [a total of] seven (7) days, for there was certainly no probable cause" (2d Amd. Compl. 6, 13).

United States District Court
Northern District of California

"[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). "That . . . can occur when legal process itself goes wrong — when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Ibid.* Alternatively, if the initial legal process goes right, pretrial detention can violate the Fourteenth Amendment when a party is detained for too long. *See, e.g.*, *Oviatt v. Pearce*, 954 F.2d 1470, 1474–75 (9th Cir. 1992). For instance, a federal due process claim can arise where a state law specifies a time by which arraignment must occur, yet a person is held longer than allowed without arraignment. *See ibid.* In California, arraignment must occur within 48 hours, excluding Sundays and holidays, or else within the next court session. CAL. PENAL CODE § 825; *see Herwick v. Budget Rent A Car Sys. Inc.*, No. CV1000409SJOPLAX, 2011 WL 13213607, at *15 (C.D. Cal. Mar. 8, 2011) (Judge James Otero).

Here, Donahue's second amended complaint makes plausible that the "legal process itself [went] wrong." It alleged Donahue never received a probable cause determination (*supra*). Moreover, the second amended complaint makes plausible that arraignment took too long to occur (2d Amd. Compl. 6, 13). Even according to the documents the County requests that the Court notice (*see* County Br. 5), Donahue was not arraigned until January 11, 2023, more than 72 hours after Donahue was detained in jail on January 6, 2023 (excluding Sunday).

The claim for *continued detention without arraignment* ("COUNT 13") against the County is **SUSTAINED,** but otherwise is **DISMISSED WITH LEAVE TO AMEND (*see* Part 3).**

### (xiii)    *Hearing Delay:  Fourteenth Amendment Due Process ("COUNT 12").*

Donahue's second amended complaint alleged that a state hearing was rescheduled on short notice, wasting five hours of Donahue's time (2d Amd. Compl. 13). This states an inconvenience, not a constitutional violation. The claim ("COUNT 12") is **DISMISSED WITH LEAVE TO AMEND (*see* Part 3).**

United States District Court
Northern District of California

### (xiv) Prosecutor Conduct:  Fourteenth Amendment Due Process ("COUNT 5").

Donahue's second amended complaint alleged that the prosecutor on his state criminal proceeding did not attempt to tell Donahue until a day before an officer's expected testimony that the officer was "Brady-listed"* (*id.* at 10–11).  This allegedly prejudiced Donahue's ability to impeach the witness (*ibid.*), violating his Fourth and Fourteenth Amendment rights.  Notably, Donahue seeks only damages.

A prosecutor is entitled to absolute immunity from civil damages for actions that are prosecutorial in function.  *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003).  "A prosecutor's decision not to preserve or turn over exculpatory material," like the witness list or impeachment information, is such an act.  *See ibid.*  A county is likewise entitled to immunity when the prosecutor acts, as on the facts alleged here, as a "state officer."  *Cf. Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000); *Goldstein v. City of Long Beach*, 715 F.3d 750, 761 (9th Cir. 2013) (not disturbing *Pitts v. Cnty. of Kern*, 949 P.2d 920, 923 (Cal. 1998)).

The claim regarding *impeachment evidence* ("COUNT 5") is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

### (xv) Prosecuting False Crime:  Fourth Amendment Malicious Prosecution ("COUNT 10").

Donahue's second amended complaint also alleged that Prosecutor Turner and the County participated in developing and bringing false accusations against Donahue (2d Amd. Compl. 12–14).  To the extent the second amended complaint alleged Prosecutor Turner played a prosecutorial role in deciding to bring a bad case, Prosecutor Turner and the County are immunized (*supra*).  And, to the extent it alleged Prosecutor Turner and the County played an earlier, investigative role, the claim fails for the reasons the malicious policing claim failed.  *Malicious prosecution* ("COUNT 10") is DISMISSED WITH LEAVE TO AMEND (*see* Part 3).

---

* The complaint appears to refer to an online list of officers purported to have violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* BRADY LIST (2014), https://giglio-bradylist.com/about (last accessed Oct. 21, 2024).  This order notices the website only to clarify, provisionally, a term used in the second amended complaint.  *See Khoja v. Orexigen Theras., Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

### 2. NO CLAIMS STATED (AND SPECIAL ISSUES) REGARDING SOME DEFENDANTS.

To the extent the second amended complaint did not explain what some defendants did (or did not do), those defendants must be dismissed from having to defend against the claims. This section clarifies why no claims have been sustained against some individual police officers. It then clarifies why some claims have not been sustained against the City or County.

#### A. INDIVIDUAL POLICE OFFICERS.

To state a Section 1983 claim against an individual, a complaint must do more than "lump all the defendants together." *Chuman*, 76 F.3d at 295. It must allege facts that make plausible that each was an "integral[]participant." *Reynaga Hernandez*, 969 F.3d at 941. An officer participates integrally only (1) if he does the wrongful acts, (2) if he forms a plan with others to do the wrongful acts, or (3) if he sets in motion or contributes to the acts of others *and* knows or should know the acts are wrong. *See Peck*, 51 F.4th at 892; *Keates v. Koile*, 883 F.3d 1228, 1241–42 (9th Cir. 2018). Much the same goes for making plausible that a supervisor is to blame for the acts of supervisees. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022).

##### (i) Officer Marques.

Officer Marques was alleged to have had an "assist" role at the traffic stop and to have "deliberately muted" his body-worn camera from about the twelve-minute mark to about the 35-minute mark, the time the search of the automobile began (2d Amd. Compl. 4). But those allegations do not make his integral participation plausible. We are not told what Officer Marques "assist[ed]" in doing. And, as described above, we are not told how muting his camera injured Donahue. As a result, the second amended complaint's claims against Officer Marques are **DISMISSED WITH LEAVE TO AMEND (*see* Part 3).**

##### (ii) Former Officer Evans.

Former Officer Evans was alleged only to have been removed — after Former Officer Evans' *past* misconduct became known — from the witness list for Donahue's state-court proceeding (*id.* at 6). The upshot is not clear: Was Former Officer Evans expected to testify

United States District Court
Northern District of California

about his conduct against Donahue; if so, what *was* Former Officer Evans' conduct?  The second amended complaint did not say (Evans Br. 2).  *See Twombly*, 550 U.S. at 570.

As a result, the second amended complaint's claims against Former Officer Evans are **DISMISSED WITH LEAVE TO AMEND (see Part 3).**  Donahue newly wrote in opposition that "Defendant Evans [w]as the Supervising Officer at the scene" (Dkt. No. 75 at 2).  Donahue can amend his complaint to add what Former Officer Evans allegedly did at the scene (*see* Evans Reply 2 (not opposing amendment)).

### (iii)    *Officers Becerra, Busby, Geis, King, Koch, and Nieves.*

Six other police officers seek dismissal because, although listed at the top of the second amended complaint (at 1–2), they are not named in its factual allegations or its claims for relief (*see* City Br. 13–14).  At our hearing, Donahue could not show where Officer Koch's actions were described.  The district court's close reading could not find where any of the six officers' actions were described, either.  The second amended complaint thus fails to "give [each] defendant fair notice" of the claims against him.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Twombly*, 550 U.S. at 560–63.  Moreover, it fails to allege, as it must, enough facts to make plausible that each police officer broke a law.  *See Twombly*, 550 U.S. at 570.  The second amended complaint's claims against Officers Becerra, Busby, Geis, King, Koch, and Nieves are therefore **DISMISSED WITH LEAVE TO AMEND (*see* Part 3)**.

### B.    ENTITIES:  CITY AND COUNTY.

To state a Section 1983 claim against a city or county, a complaint must also do more than lump the city or county in with the individual officers.  The complaint must allege facts (and later prove) that the entity (1) had a policy, a custom or practice, or a hiring or training or disciplinary regime (or a *failure* to have what it should), (2) which made clear the entity's indifference to the right at issue, and (3) thus motivated (or ratified) (4) the violation of the plaintiff's right.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978); *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).  A plausibly alleged "policy of inaction" can suffice to state a claim, *see Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 812–

13 (9th Cir. 2024), such as when the complaint plausibly alleges "repeated constitutional violations [of the same kind] which went uninvestigated and for which the errant municipal officers went unpunished," *see Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011). So can a plausibly alleged order or act of a "final policymaker," a person empowered and unchecked by the city who is fairly characterized as acting for the city itself. *See Monell*, 436 U.S. at 694; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997).

In their motions to dismiss, the City and County each accept that the second amended complaint states a claim that the City could be liable for any unlawful seizure of the iPhone, and that the County could be liable for any unlawful detention at the jail (*see* City Br. 1; County Br. 4–5). And, this order found that the second amended complaint sufficiently stated a claim that either could be liable for any unlawful seizure of Donahue's automobile, given the concessions the City and County made and the inferences the allegations supported (*supra*).

That said, no other claims were sustained against the City or County as entities. To the extent Donahue intended to bring other claims not just against officers but against the City, for instance, those claims did not make it. Some of the allegations that came closest were that:

- "ANTIOCH POLICE DEPARTMENT['s] arrest of plaintiff did not meet the precedent and standard of a warrantless search" (2d Amd. Compl. 12);

- "[T]he plaintiff feared for his life due to the knowledge of the K-9 unit's recent events that resulted in the loss of life in 2018 and incidents in 2019" (*id.* at 3);

- Donahue's photo was taken and circulated "in the police officer[s'] group message that was later found to be containing criminal and unethical activity by federal and internal investigators" (*id.* at 6);

- Some police officers who interacted with Donahue and one slated to testify against him were employed by "ANTIOCH POLICE DEPARTMENT" despite being "under Brady investigation" (*id.* at 10–11.); and,

- "ANTIOCH POLICE DEPARTMENT" and the "CITY OF ANTIOCH" orchestrated collective efforts to deprive Donahue of his rights (*e.g.*, *id.* at 13–14).

These statements ultimately were too vague and scattered to make plausible that City policies, practices, or policymakers caused or ratified specific alleged violations.

In short, as explained above, the continued seizure of the iPhone as to the City ("COUNT 6"), the detention in jail as to the County ("COUNT 8" and "COUNT 13"), and the prolonged seizure of the automobile as to the City and the County ("COUNT 15") were SUSTAINED (*supra*). Otherwise, any claims meant to be stated against the City or the County were, as to them, DISMISSED WITH LEAVE TO AMEND (*supra*).

### 3. THE RESULTS AND LEAVE TO AMEND.

For the above reasons, including concession or failure to oppose, the following claims are sustained against the following defendants, while the remaining claims are dismissed for now:

| Count | Event | Constitutional Amendment, Tort | | SUSTAINED as to: |
|---|---|---|---|---|
| 1 | Roadside Stop (Initial and Prolonged) | IV | *Unlawful Seizure of Person* | Riosbaas (both); Smith (prolonged). |
| 14 | Armed Arrest | IV | *Excessive Force* | Riosbaas; Smith. |
| 11 | Tight Handcuffing | IV XIV | *Excessive Force* *Deliberate Indifference* | Riosbaas. |
| 9 | Automobile Search | IV | *Unlawful Search* | Riosbaas. |
| 15 | Automobile Impoundment, Return | IV XIV | *Unlawful Seizure* *Due Process* | City; Riosbaas; County. |
| 6 | iPhone Confiscation and Failed Return | IV XIV | *Unlawful Seizure* *Due Process* | City; Riosbaas; Smith. |
| 7 | Instagram Post About Donahue | IV | *Rights Violations Plus Defamation* | (Dismissed.) |
| 3 | Evidence Fabrication | XIV | *Due Process* | (Dismissed.) |
| 4 | Evidence Suppression | XIV | *Due Process* | (Dismissed.) |
| 16 | Policing False Crime | I IV | *Retaliatory Arrest* *Malicious Prosecution* *Section 1985 Conspiracy* | (Dismissed.) |
| 8 | Jailed Without Timely Probable Cause | IV | *Unlawful Seizure* | County. |
| 13 | Jailed Without Timely Arraignment | IV XIV | *Unlawful Seizure* *Due Process* | County. |
| 12 | Hearing Delay | XIV | *Due Process* | (Dismissed.) |
| 5 | Prosecutor Conduct | XIV | *Due Process* | (Dismissed.) |
| 10 | Prosecuting False Crime | IV | *Malicious Prosecution* | (Dismissed.) |

*For clarity*, all claims are dismissed against Former Officer Evans and Officers Becerra, Busby, Geis, King, Koch, Marques, and Nieves.  Same as to Prosecutor Turner.

This order does not find that Donahue cannot state the claims now dismissed or claims against defendants now dismissed.  It simply finds that his second amended complaint did not.

Donahue is thus granted leave to amend his complaint.  Such amendments may seek to fill gaps identified by defendants' motions to dismiss or by this order, which included names missing for officers (or mismatching names and numbers), factual allegations missing for officers listed but not described, and insufficient factual allegations respecting policies and practices of the police department, City, or County connected to specific alleged events.

The claims sustained by this order do not need to be amended.  As to them, parties can shift attention to proving (or disproving) those claims.

## CONCLUSION

The motions to dismiss (City Br.; County Br.; Evans Br.) are **GRANTED IN PART AND DENIED IN PART.**  The motions for a more definitive statement (City Br. 5; Evans Br. 4) are **DENIED AS MOOT.**  Those results are more fully summarized in Part 3.

Donahue is granted leave to amend his complaint again, should he wish, by **MONDAY, NOVEMBER 18, 2024.**  If Donahue's basic ability to amend is frustrated, such as by defendants' failure to produce names matching body cameras, Donahue may file a short statement explaining the issue and seeking relief.  Absent such motion and relief, defendants' answers to Donahue's claims are due **TUESDAY, DECEMBER 3, 2024.**

IT IS SO ORDERED.

Dated:  November 1, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE